**Below is a Memorandum Decision of the Court.**



_____
**Paul B. Snyder
U.S. Bankruptcy Court Judge
(Dated as of Entered on Docket date above)**

_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>STEVEN R. SMYTHE and MELANIE M. SMYTHE,<br><br>                Debtors. | Case No. 10-49799 |
| STEVEN R. SMYTHE and MELANIE M. SMYTHE,<br><br>                Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | Adversary No. 11-04077<br><br>**MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT** |

This matter came before the Court on February 24, 2012, on the cross-motions for summary judgment filed by the United States of America and Steven and Melanie Smythe (Debtors) on the Debtors' complaint to have their federal income tax liabilities for the years 1999 through 2004 discharged. At the conclusion of the hearing, the Court took the matter under advisement.

The Debtors filed a bankruptcy petition under Chapter 7, Title 11 on November 29, 2010. On March 1, 2011, the Debtors filed a complaint to determine whether their federal income tax liabilities for the years 1999 through 2004 are dischargeable. On May 19, 2011, the Internal Revenue Service of the United States (I.R.S.) filed an answer to the complaint conceding that the tax liabilities for 2002,

**Below is a Memorandum Decision of the Court.**

2003 and 2004 were dischargeable. The I.R.S. contends that the income tax liabilities assessed by the I.R.S. against the Debtors for 1999, 2000 and 2001 are not dischargeable pursuant to §523(a)(1)(B)(i).[1]

The Debtors' federal income tax returns for tax years 1999 and 2000 were due on October 15, 2000, and 2001, respectively, after two extensions from the I.R.S. The Debtors' federal income tax return for tax year 2001 was due on August 15, 2002, after one extension from the I.R.S. The Debtors failed to timely file their federal income taxes returns (Forms 1040). The I.R.S. examined the Debtors to determine their tax liabilities for tax years 1999 through 2001, and on July 2, 2004, the I.R.S. sent notices of deficiency to the Debtors. On December 6, 2004, after the Debtors did not to respond to the I.R.S. notices, the I.R.S. assessed deficiencies on the Debtors, as follows:

I.R.S. Initial 1999 tax obligations (with fees, fines and interest) = $54,896.30;

I.R.S. Initial 2000 tax obligations (with fees, fines and interest) = $55,833.08;

I.R.S. Initial 2001 tax obligations (with fees, fines and interest) = $63,135.17.

On December 21, 2004, the I.R.S. received the Debtors' completed Forms 1040 for tax years 1999, 2000, and 2001. The Debtors claim they filed the Forms 1040 without notice of the I.R.S. tax assessments sent on December 6, 2004. Thereafter, the I.R.S. abated the Debtors' tax obligation for 1999 by $25,525.33 (leaving $29,370.97 owed); for 2000 by $24,356.89 (leaving $31,476.19 owed); and for 2001 by $20,708.13 (leaving $42,427.04 due).

The Debtors allege that Mr. Smythe has been diagnosed with Major Depressive Disorder, Bipolar Disorder, Post Traumatic Stress Disorder (PTSD) and Attention Deficit Disorder (ADD), which may have led to avoidance of timely filing his Forms 1040. The Debtors also allege that Mrs. Smythe relied on Mr. Smythe to file their Forms 1040, and she also has experienced her own medical issues.

On January 13, 2012, the I.R.S. filed a motion for summary judgment, arguing that the Debtors' tax liabilities for the years 1999, 2000, and 2001 are excepted from discharge pursuant to

---

[1] This Court refers to sections of 11 U.S.C. § 523 throughout, but omits the Title 11 of the United States Code.

**Below is a Memorandum Decision of the Court.**

§523(a)(1)(B)(i). In response to this motion, the Debtors filed a motion to shorten time to hear their cross-motion for summary judgment. The motion to shorten time contained as an exhibit the Debtors' motion for summary judgment. In the motion, the Debtors represented that they would not file any further pleadings on summary judgment beyond their responsive memorandum to the I.R.S.'s motion, which was subsequently filed on February 9, 2012. The I.R.S. opposed the shortening time. On February 10, 2012, the Court conducted a telephonic hearing, at which time the Debtors reiterated that their summary judgment motion would be based solely on their memorandum in response to the I.R.S.'s summary judgment motion. The Court determined that both summary judgment motions would be heard on February 24, 2012.

A party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party may not rest upon mere allegations or denials of his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The sole issue on the parties' summary judgment motions is whether the Debtors' income tax debts are excepted from discharge pursuant to § 523(a)(1)(B)(i). Section 523 provides in relevant part as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>   (1) for a tax or a customs duty— . . .
>     (B) with respect to which a return, or equivalent report or notice, if required—
>       (i) was not filed or given . . . .

Therefore, § 523 excludes from the Bankruptcy Code's discharge provisions a tax liability if "(1) the tax underlying the tax liability debt required a return; and (2) the debtor failed to file the required return." Cal. Franchise Tax Bd. v. Jackson (In re Jackson) 184 F.3d 1046, 1050 (9th Cir. 1999). Exceptions to discharge are to be narrowly construed, and the party seeking to establish an exception to the discharge of the debt bears the burden of proof. Bellco First Fed. Credit Union v. Kaspar, 125 F.3d 1358, 1059, 1361 (10th Cir.1997).

**Below is a Memorandum Decision of the Court.**

The narrow issue before the Court is whether the Debtors' tax debts for 1999, 2000, and 2001 are nondischargeable under § 523(a)(1)(B)(i) when the Debtors' Forms 1040 were not filed until after the I.R.S. had made assessments for these tax years.

The I.R.S. first argues that the Debtors' tax debts are nondischargeable because the debts are based on the I.R.S. assessments, and not on the Debtors' Forms 1040, so that the assessments are tax debts for which no returns were filed or given under §523(a)(1)(B)(i). Under this argument, although the Debtors filed their Forms 1040 on December 21, 2004, the debts had already arisen under the earlier I.R.S. assessments made on December 6, 2004. The I.R.S. concludes that since the tax assessments were established before the Forms 1040 were filed, they are debts for which returns were not filed or given and, consequently, are nondischargeable under §523(a)(1)(B)(i).

As support for this position, the I.R.S. cites the case of Wogoman v. I.R.S. (In re Wogoman), 2011 WL 3652281 (Bankr. D. Colo. Aug. 19, 2011). In Wogoman, the dispute was over a similar situation, where the debtors did not initially file their taxes by the deadline, the I.R.S. assessed a deficiency, and the debtors then filed their Form 1040. Wogoman, 2011 WL 3652281, at *3. The court in Wogoman recognized that the debt arose based on the I.R.S.'s examination and assessment, and not on the debtors' post-assessment Form 1040. Thus, the court held that the tax liability, which was established well before the Form 1040 was filed, was nondischargeable under § 523(a)(1)(B)(i). Based on this determination, the court further held that it did not matter whether the post-assessment Form 1040 met the definition of a "return" under §523(a)(1)(B)(i). Wogoman, 2011 WL 3652281, at *5-6.

The Debtors did not address this particular argument, but countered that the issue here is whether the Debtors' post-assessment Forms 1040 qualify as "returns" under § 523(a)(1)(B)(i) so as not to run afoul of the failure-to-file-return rule. The Debtors allege that in order to make this determination, the Court must look to case law developed prior to enactment of the Bankruptcy Abuse

**Below is a Memorandum Decision of the Court.**

Prevention and Consumer Protection Act (BAPCPA) of 2005,[2] which defines when a post-assessment return can qualify as a "return" under § 523(a)(1)(B).

The Court begins with "'the language itself [and] the specific context in which that language is used.'" McNeill v. U.S., ___U.S.___, 131 S. Ct. 2218, 2221 (2011) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). The Bankruptcy Code defines "debt" as "liability on a claim." §101(12). A "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." §101(5)(A). A "right to payment" is an "enforceable obligation." Cohen v. De La Cruz (In re Cohen), 523 U.S. 213, 218 (1998). In tax law, a tax assessment "is the official recording of liability that triggers levy and collection efforts." Hibbs v. Winn, 542 U.S. 88, 101 (2004).

Given the plain language reading of "debt" in the Bankruptcy Code and the holding in Wogoman, the Court agrees with the I.R.S.'s argument. When the I.R.S. made tax assessments against the Debtors, the Debtors' tax obligations became enforceable and the I.R.S. could pursue its claims; therefore, the assessments created "debt[s]" as defined in the Bankruptcy Code. Although the Debtors subsequently filed Forms 1040, the tax debts had already been established by the I.R.S. assessments. The tax debts, therefore, are debts "for which no return was filed," and are nondischargeable under § 523(a)(1)(B)(i) In light of this determination, the Court agrees with Wogoman that the issue of whether the Debtors' post-assessment Forms 1040 qualify as "return[s]" under §523(a)(1)(B)(i) is irrelevant.

Alternatively, the I.R.S. argues that even if this Court assumes the debts did not arise from the assessments, but rather from the Debtors' post-assessment Forms 1040, the debts do not meet the requirements of a "return" in §523(a)(*).[3] In 2005, Congress added to this section the definition of

---

[2] The Pre-BAPCPA case law allows a document to qualify as a "return" if the document: (1) purports to be a return; (2) is executed under penalty of perjury; (3) contains sufficient data to allow calculation of tax; and (4) represents an honest and reasonable attempt to satisfy the requirements of the tax law. United States v, Hatton (In re Hatton), 220 F.3d 1057, 1060 (9th Cir. 2000).

[3] The Court uses 523(a)(*) when referring to the flush language of §523 as a matter of convenience.

"return," as follows:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

§ 523(a)(*).

Thus, a "return" can be either (1) a return that satisfies the requirements of applicable nonbankruptcy law, including applicable filing requirements; or (2) a return under 26 U.S.C. §6020(a). A "return," however, cannot be a return under 26 U.S.C. 6020(b), for §523 purposes.

The Internal Revenue Code provides, "If any person shall fail to make a return required by this title or by regulations . . . but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person . . . ." 26 U.S.C. § 6020(a). Neither party contends that the Debtors' post-assessment Forms 1040 would qualify as § 6020(a) returns. The Internal Revenue Code further provides, "If any person fails to make any return required by any internal revenue law or regulation . . . at the time prescribed therefore, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." 26 U.S.C § 6020(b). Neither party contends that the Debtors' post-assessment Forms 1040 would qualify as substitute returns, so this section also does not apply.

The only question, then, is whether the Debtors' Forms 1040, submitted after the I.R.S. made assessments, satisfy the requirements of applicable nonbankruptcy law, including applicable filing requirements.

The Ninth Circuit Court of Appeals has not addressed this issue. The Fifth Circuit Court of Appeals (Fifth Circuit), however, recently held that a debtor's failure to file income taxes by April 15 of each year (or by date of approved extensions), makes a Form 1040 not a "return" under § 523(a)(*) because the filing does not meet the filing requirements. McCoy v. Miss. State Tax Comm'n, (In re

**Below is a Memorandum Decision of the Court.**

McCoy), 666 F.3d 924, 932 (5th Cir. 2012). The Fifth Circuit holding appears to indicate that if a debtor files his or her return even one day late, and the filing does not fall under the "safe harbor" provision of §6020(a), the late-filed Form 1040 does not comply with the "applicable filing requirements" and is not dischargeable. See McCoy 666 F.3d at 932.

The I.R.S. proposes a more moderate position than the Fifth Circuit. Under the I.R.S.'s position, a Form 1040 filed after the filing deadline could still satisfy the "applicable filing requirements" as long as it was filed pre-assessment. The I.R.S. asserts that its position is consistent with promoting and reinforcing our self-filing requirement, which is the foundation of our taxation scheme. See Commissioner v. Lane-Wells, Co., 321 U.S. 219, 223 (1944). The Court favors the I.R.S.'s position.

The Court, however, need not resolve the differences between the Fifth Circuit's holding and the I.R.S.'s position. In this case, the Debtors clearly failed to file their Forms 1040 (1) by the applicable deadlines, and (2) before the I.R.S. made assessments. Under either the Fifth Circuit's holding, or the position advocated by the I.R.S., the Debtors' Forms 1040 do not satisfy the "applicable filing requirements," and thus are not "returns" under § 523(a)(*).

The Court has determined that the tax assessments made by the I.R.S, and not the post-assessment Forms 1040 filed by the Debtors, are the basis of the Debtors' federal income tax debts under § 523(a)(1)(B)(i). Alternatively, the Court has determined that the Forms 1040 do not qualify as "returns" under § 523(a)(*). Under both analyses, the Debtors' federal income tax debts for tax years 1999, 2000, and 2001 are nondischargeable pursuant to § 523(a)(1)(B)(i). Accordingly, the Court need not address the Debtors' argument under pre-BAPCPA law. The Court grants the I.R.S.'s motion for summary judgment and denies the Debtors' motion for summary judgment.

/ / / End of Memorandum Decision / / /